IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13 CR 774 |
| | ) | Judge John J. Tharp |
| GREGORY CHESTER | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT CHESTER'S SENTENCING MEMORANDUM**

Now Comes Defendant Gregory Chester, by and through his attorneys, and provides the following sentencing memorandum regarding the §3553 factors:

When sentencing Gregory Chester, it is important to be mindful of the difference between the allegations made by the government at trial, and the findings actually made by the jury. At trial, the government chose to employ the Pinkerton instruction against Mr. Chester. The Pinkerton instruction is a powerful tool for the government. It allows them to hold a defendant responsible for criminal acts that he may not have participated in and may not have even known about. Mr. Chester was the only defendant subject to the Pinkerton instruction. As a result, the government cannot now claim that they have proven that Mr. Chester participated in a murder or that he agreed to any act of violence. All they can say is that under the very broad terms of the Pinkerton instruction he shares responsibility under the law for events he may not have known about.

1

Gregory Chester was convicted of participating in the Hobos racketeering conspiracy. He is an admitted trafficker of heroin. He was found by the jury to be responsible for the deaths of Keith Daniels and Antonio Bluitt because they were reasonably foreseeable and advanced the goals of the Hobos. But he is not a killer himself. He is not a violent man who physically preys on others. There is no evidence that he ever shot anyone or actually ordered or solicited a shooting to be committed by anybody else. Despite the best efforts of the government, they were unable to establish that by even a preponderance of the evidence.

Ultimately, what Greg Chester is guilty of is being a heroin dealer who associated with the type of people the government now wants to paint him to be. His friends and business associates were violent men. His friends and business associates were shooters and killers. But Gregory Chester simply was not and has not been proven to be. He associated with violent, perhaps even evil people. But even willful association with such men cannot ever justify the imposition of a life sentence without some sort of proof of actual involvement in violence or or powerful evidence of its solicitation. No such proof exists, for the simple reason that Gregory Chester did not participate in violence and did not solicit its commission.

Yes, Mr. Chester was convicted of armed robbery as a young man, and that fact cannot be ignored. But the armed robbery happened twenty years ago, long before any of the events in this case. During the timeframe relevant to the charges here, Mr. Chester was not committing any robberies. There is no evidence that Mr. Chester has ever robbed or threatened anybody with a firearm since he was 19

years old. Today, Mr. Chester is 40. The mistakes he made as a teenager, more than half his life ago, do not tell us what kind of man he is today, or what kind of man he was during the charged conspiracy. Those mistakes cannot be allowed to be the driving force behind the sentence he received in this case.

Insofar as the robbery can be considered, it should be considered only to help the court evaluate how Mr. Chester responded to being incarcerated for it, and how that factors into his likelihood for rehabilitation. On that score, it is important to note that, while Mr. Chester continued to make serious mistakes after his release, they were not the same mistakes that delivered him into prison in the first place. He was not robbing stores, he was not threatening innocents with firearms, and he was not taking them hostage to procure money. His mistake was believing that he could make a living selling large quantities of heroin.

Mr. Chester was successful in that business, and it enabled him to live a more privileged life than would have otherwise been available to him. He did so without considering the harm his product would inflict upon his customers and their communities. He did so for a period of years and that certainly warrants a very serious sentence. But it does not warrant a life sentence. Unfortunately, Mr. Chester is not unique or even particularly special in this district for the amount of heroin he distributed. That does not make him blameless and it does not make his conduct excusable. But even those who traffic in larger quantities than Gregory Chester do not get life sentences without evidence of direct participation or solicitation of violence.

3

Mr. Chester's drug distribution is not driving the government's request for a sentence of life imprisonment. The drug distribution alone could never justify such a request. The problem for the government is that the drug distribution is the only offense committed by Gregory Chester for which they have been able to present any reliable evidence. Instead, the government seeks to sentence Mr. Chester on the basis of mere association with other more culpable individuals. Behind all the bluster and innuendo, this fact is borne out by the allegations made against Mr. Chester by the government.

Unable to prove that Mr. Chester actually solicited the murders of Bluitt or Daniels, the government relies on the implication that they must have been committed on Chester's behalf. The problems with this position or manifold. First, the only evidence produced by the government to actually establish this fact was based on third-hand rumor and innuendo.

As to the murder of Bluitt and Neeley, there was conflicting evidence produced at trial about some bounty placed by Mr. Chester. The court has already deemed this to be insufficiently established to constitute even a preponderance of evidence. There was the general rumor that the Hobos believed Mr. Chester's shooting to have been ordered by Antonio Bluitt and therefore shot him in retaliation. But there is no firm evidentiary basis to conclude even that much. Mr. Chester certainly never told anybody that Bluitt was responsible for his shooting – he was hospitalized and away from contact at the time when the rumors were alleged to have been present on the street about the source of his shooting.

Moreover, the series of shootings that culminated in the killings of Bluitt and Neeley trace back to long before Mr. Chester was shot, to a conflict between Stanley Vaughn's Dirty Low GDs and the Row Row Black Disciples, apparently brought on by an incident of "mean mugging" at a party. Holding Mr. Chester responsible for this chain of events can be described in no other terms than guilt by association. Some of Mr. Chester's friends and associates may have shot and killed Bluitt and Neeley without his solicitation and apparently without so much as his knowledge. But because he was associated with those people, and because their actions were reasonably foreseeable to him, the government now asks this Court to sentence Mr. Chester as though he himself took part in the shootings. But he simply did not. He is not culpable as a murders simply because he was associated with the men who committed them and he should not be sentenced as though he is.

  Similarly, the Keith Daniels murder cannot be laid at Mr. Chester's feet. The jury found that Mr. Poe committed that murder. For the sake of argument, Mr. Chester will assume that the verdict on that count was accurate. The government argued that Mr. Poe committed that murder at Mr. Chester's behest. The government is plainly wrong about that, as all of Mr. Chester's communication following his arrest was recorded. Despite the government's arguments that Mr. Chester's recorded jail call contained "coded language" that solicited the murder of Keith Daniels, the content of those calls establishes neither solicitation of murder or even foreknowledge that it would occur. Nowhere in the recorded jail call between Chester and Poe is there even a suggestion that Chester wants Poe to kill anybody,

or even a mention of or reference to Keith Daniels[1]. Mr. Chester had no communication with Mr. Poe about Keith Daniels prior to Daniels's murder. If Mr. Poe killed Mr. Daniels, it was not at Mr. Chester's direction or because Mr. Chester wanted it to happen. This is why, after Poe has cut his monitoring band off, Mr. Chester asks a female on the phone: "what did he do that for?" His statement is simply inconsistent with him having directed a shooting or had prior knowledge that a shooting would occur. Once again, the government wants the Court to hold Mr. Chester responsible for his association with someone that they can show was actually violent. But association, even knowing association, isn't the same thing as being violent oneself and it is not enough to justify a life sentence.

    This line of thinking is even more apparent in the government's repeated citation to the 2006 shooting at the car wash. It is important to note that Mr. Chester was *the victim* in this incident. He was shot. He was not shooting. He was not committing any criminal act. He was the victim and he was seriously injured. He was with Mr. Poe, who returned fire at the shooter who initiated the attack. Mr. Chester did not return fire and there is no evidence he was even armed. After he and Mr. Chester were shot at, Mr. Poe shot back. This is evidence that Mr. Poe is violent, at least when directly provoked. It is evidence that Mr. Chester associates with people who are violent. It is not evidence that any of that violence was

---

[1] Even if the Court were to adopt the government's erroneous interpretation of a portion of the call as Mr. Chester saying "but a motherfucker b-nop d-nead, when I catch him," the government's theory makes no sense. Assuming the motherfucker in question was Keith Daniels (it isn't—it is plainly the fi-nag who other recordings prove to be an altogether different person), Mr. Chester would be indicating a desire to kill him himself, not urging Poe to do so. Poe deciding to take matters into his own hands at that point would then be against Mr. Chester's expressed wishes, which would serve as a stark rebuttal of the government's theory that the violence in this case was carried out in loyalty to Mr. Chester and obedience to his authority.

6

perpetrated at his direction or because of him. Mr. Poe was not shot, but he was with Mr. Chester when the shots were fired. There is no reason to assume that Poe returned fire because of Mr. Chester rather than because he himself was being shot at. There is no evidence that the return fire was out of respect or deference to Mr. Chester and his "leadership." The only evidence is that Poe fired back when fired upon and that Mr. Chester was associated with him. This association is not evidence of culpability for violence of the type necessary to warrant a life sentence.

The second major problem with the government's position regarding these instances is that, even if they are correct that the actual perpetrators committed the acts because they believed it was what Mr. Chester would want, it does not follow that this fact would make Mr. Chester any more culpable for sentencing purposes. If every one of the shooters in the relevant incidents were thinking about Mr. Chester and dedicating each pull of the trigger to his exalted leadership, it would not change Mr. Chester's culpability. Without evidence that Mr. Chester ever communicated a desire for those shootings to occur [of which there is none], he is no more culpable for them than Jodie Foster is culpable for the attempted assassination of Ronald Reagan.

Yes, Mr. Chester knowingly associated with unsavory individuals who regularly committed even more unsavory acts. He conducted business with them. He hung out with them socially. But that association does not mean that the violence was his fault. He might have been able to predict that some violence would occur. He might have even benefitted from some of the violence through the

7

enrichment of his business associates. Even if he had decided to stop associating with these individuals, that would not have saved a single life or prevented a single shooting. His failure to distance himself from these individuals because they did violent things should not be viewed as a fatal flaw requiring a lifetime of incarceration.

The government asks this Court to see something that simply was not there when it comes to Mr. Chester. He was a successful drug dealer and that status brought him respect in the streets in his neighborhood. He was friends with other successful drug dealers, many of whom were significantly violent individuals. He had business arrangements with some of these individuals, and shared social experiences as well. The jury has found that these arrangements have been sufficient to establish that Mr. Chester joined a racketeering conspiracy with some of these friends and associates. But the government is not satisfied with that characterization. Instead of recognizing the reality revealed by the actual evidence, the government paints Mr. Chester as some sort of all-powerful gang boss, conducting Machiavellian turf wars, ordering robberies, and doling out murder hits on anyone who might be thought to have wronged him. That isn't the person Gregory Chester is and it isn't the person the evidence has shown him to be. There was not a single piece of uncontradicted evidence that connected Gregory Chester to any of the murders in this case. There is not any reliable basis to conclude that any of the shootings were conducted with his blessing or in accordance with his supposed leadership of the entire Hobos Racketeering Enterprise. All the

government has is innuendo, third-hand rumor, and disingenuous interpretations of recorded phone calls, which could easily be interpreted in the opposite way as that advocated by he government. What they don't have is any strong or concrete evidence of Mr. Chester directing or committing any acts of murder, which might justify a sentence of life in prison.

The reason no evidence exists to support the government's theory that Mr. Chester was at the root of any violence in this case is that he simply was not. Mr. Chester was a drug dealer and a gambler. He associated with people involved in violence but did not conduct any himself, nor direct others to do so on his behalf. That is a fair reading of the evidence and, because of the drug trafficking in the case, it is also arguably sufficient to support the jury's verdict in this case. The government relies only on supposition, innuendo, and contradicted cooperator claims to argue that Mr. Chester was, in any way, involved in the Bluitt/Neeley and Daniels murders. In the end, no witness actually could say they ever heard Mr. Chester direct any of the acts of violence about which evidence was presented. The government argued from uncorroborated and even contradicted evidence (Chad Todd's account of the drug dealer robbery discussion at Mr. Chester's apartment was plainly contradicted by other statements made by Mr. Todd) that Mr. Chester was ordering robberies of drug dealers. This evidence was, in no sense, reliable. The government has also pointed to at least two instances when Mr. Chester was supposedly seen carrying a firearm.

9

The evidence of those firearm incidents was also uncorroborated, contradictory, and unreliable, but even if the Court assumes that the incidents actually took place, they do not show Mr. Chester to be a violent man. Mr. Chester was not seen firing a weapon or threatening anybody with one. He was supposedly seen sitting in a van with a firearm on his lap or handing a firearm off to someone else when he went inside a building for a meeting. Both of these incidents occurred after Mr. Chester had been shot multiple times, and on two different occasions. Mr. Chester carrying a weapon for self defense under those circumstances, while illegal, does not demonstrate him to be the type of violent individual portrayed by the government. It supports the position that Mr. Chester was a drug dealer, engaged in a dangerous business but not a danger himself (other than to the consumers of his product), interested in protecting himself because he had been repeatedly shot while engaged in that business in the past. If Mr. Chester did possess the firearms that the government's witnesses alleged—which has not been reliably established— that would absolutely not render him worthy of a life sentence.

Ultimately, Mr. Chester has undeniably profited from the sale of a dangerous drugs to others. He undeniably associated with dangerous, violent men in the course of that business. Perhaps it was reasonably foreseeable that people he was associating with would commit the types of acts for which the government now wants to sentence Mr. Chester. But even if such acts were potentially foreseeable, Mr. Chester's association with such men does not render him deserving of the same sentence that they would receive. Mr. Chester simply is not as culpable as the men

who committed the acts that the government wants to hold him responsible for. He didn't solicit them, he didn't desire them, and he didn't condone them. No witness could ever make an uncontradicted claim to the contrary. Mr. Chester should be sentenced for what he has actually done, not for the acts of others that the government has tried to lay at his feet despite the absence of any compelling evidence of his knowledge or approval of these acts. Mr. Chester should be sentenced for selling dangerous amounts of heroin, which furthered the goals of a racketeering conspiracy. He should not be sentenced as though the all of goals of the racketeering conspiracy were the same as his own goals. Mr. Chester was a drug dealer, not a murderous fiend. He deserves a sentence fit for a large-scale, but nonviolent, distributor of heroin, not a sentence fit for an incorrigibly violent murderer.

    A life sentence is an extraordinary thing. People change over time. Few of us are the same people today that we were twenty, ten, or even five years ago. But a life sentence denies even the hope of redemption. Judges must consider the need for rehabilitation. What motivation does a man have to make himself better if he has no hope of the future? Such a sentence, if ever just, should be reserved for only those few individuals that have committed such morally atrocious acts that they have proven themselves unfit to be part of society.

    A life sentence should never be based on suspicion, innuendo or rumor. On must be very very sure before imposing such a savage penalty. The kind and quality of evidence against Mr. Chester does not provide that kind of certainty that

11

he directed or participated in any act of murder. To get a sentence of life, more certain and compelling evidence should be required.

The line between vengeance and retribution is a thin one. But, in the administration of justice in a just society, it might be the one that matters most. Retribution leaves space for mercy while vengeance does not. Vengeance may condemn a man for acts he did not directly compel or create. There is surely too much violence on the city's south and west sides. But Mr. Chester did not cause that violence. The violence perpetrated by his friends and associates is not his fault in the absence of any compelling evidence that he directed it, asked for it, or knew it would transpire before it did. Hence, to sentence Mr. Chester to a life sentence, one would have to be motivated by vengeance rather than retribution. The law does not and should support that kind of a sentence.

Separating vengeance from retribution is not an easy task. Vengeance is easy to give. Retribution is a harder thing to calculate. In this case, retribution requires punishment. Mr. Chester sold drugs. Mr. Chester did not stand up and say "no" to those around him that committed horrible crimes. But retribution does not require that Mr. Chester forfeit the rest of his life. Indeed, just retribution does not allow it. Retribution requires that Mr. Chester answer for what he has done. Retribution does not allow for him to be compelled to answer for that which he has not. He should be sentenced based on the quality of the evidence against him, not the quality of the evidence against his associates.

Any sentence greater than twenty years would send the wrong message in this case. It sends the message that the court system does not care what a defendant actually did, as long as the government waves its hand and asserts that his association with violent individuals is enough to label him a violent individual. It sends the message that the justice system does not care about the truth and does not care about the fact that one defendant has a very different quality of evidence against him than all of the others.  The defendant against whom the evidence is weakest should get the lowest sentence.  That is only fair.  Giving Mr. Chester the same sentence as those who have been found to have participated in acts of murder creates unjust punishment and sends the message that the law should be feared rather than respected.  That is a dangerous message to send.

A life sentence for Mr. Chester in this case would do more harm than good, from a systemic perspective. A sentence of twenty years promotes respect for the law by explicitly acknowledging that a defendant's personal culpability is not blindly  tied to the acts of his friends and that the Court will acknowledge that a weaker quality of evidence against one defendant requires a lesser sentence. A sentence of 20 years recognizes the harms caused by the acts Mr. Chester actually undertook and holds him responsible for his drug dealing as well as his membership in the charged racketeering conspiracy without equating him to the worst members of that group simply because he knew them and agreed to do business with them. It is a just sentence, a fair sentence, and a sentence that is sufficient but not greater than necessary to further all of the purposes of punishment under §3553.

WHEREFORE, Mr. Chester respectfully requests that this Court impose a sentence of no greater than 240 months' incarceration.

                                                      Respectfully submitted,
                                                      GREGORY CHESTER

                                                      By:    s/ Beau B Brindley

LAW OFFICES OF BEAU B. BRINDLEY
53 West Jackson Blvd.
Suite 1410
Chicago, Illinois 60604
312.765.8878